Yongmoon Kim
Email: ykim@kimlf.com
KIM LAW FIRM LLC
411 Hackensack Avenue 2nd Floor
Hackensack, New Jersey 07601
Tel. & Fax (201) 273-7117
*Attorneys for Plaintiff and those similarly situated*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| LYNN ANTISTA,<br>*on behalf of herself and those similarly situated,*<br><br>Plaintiff,<br><br>vs.<br><br>FINANCIAL RECOVERY SERVICES, INC., CAVALRY SPV I, LLC, and JOHN DOES 1 to 10<br><br>Defendants. | Civil Action No.<br><br><br><br><br>**CLASS ACTION COMPLAINT** |

Plaintiff, Lynn Antista, individually and on behalf of all others similarly situated, by way of Class Action Complaint against Defendants, Financial Recovery Services, Inc., and Cavalry SPV I, LLC, says:

### I.   NATURE OF THE ACTION

1.   This class action for damages arises from the Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA").

### II.   JURISDICTION AND VENUE

2.   This Court has jurisdiction to entertain this matter pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

3. Venue in this action properly lies in the District Court of New Jersey, Newark Vicinage, as Defendants regularly do business in this district.

### III. PARTIES

4. Plaintiff Lynn Antista ("Plaintiff") is a natural person residing in Bergen County, New Jersey.

5. Defendant Financial Recovery Services, Inc. ("FRS") is a debt collector located at 4510 W. 77th Street, Suite 200, Edina, Minnesota. 55435.

6. Defendant Cavalry SPV I, LLC ("Cavalry") is a Delaware limited liability company with its principal place of business at 500 Summit Lake Drive, Suite 400, Valhalla, New York 10595, who purchases defaulted consumer debts for pennies on the dollar.

7. Defendants John Does 1 to 10 are fictitious names of individuals and businesses alleged for the purpose of substituting names of defendants whose identity will be disclosed in discovery and should be made parties to this action.

8. In this pleading, "Defendants" in the plural refers to all Defendants.

### IV. FACTS

**A. Background**

9. Defendants are not in the business of extending credit, selling goods or services to consumers.

10. Defendants regularly collect or attempt to collect debts allegedly owed to others which were incurred primarily for personal, family or household purposes.

11. Defendants are in the business of collecting defaulted debts or alleged debts of natural persons.

12. When attempting to collect debts, Defendants use the mails, telephone, the internet and other instruments of interstate commerce.

13. Cavalry is a litigious debt-buyer who purchases defaulted consumer accounts for pennies on the dollar, who then seeks to recover the full value of those unpaid accounts.

14. In connection with Cavalry's efforts to collect consumer debts, Cavalry routinely hires attorneys, law firms and collection agencies to collect the consumer debts.

15. Defendants have asserted that Plaintiff incurred or owed a certain financial obligation arising from an account originating from HSBC Bank Nevada, N.A. ("Debt" or "Account").

16. The Debt arose from one or more transactions which were primarily for Plaintiff's personal, family, or household purposes.

17. Defendants contend that the Account was past-due and in default.

18. The Account was past-due and in default when it was purchased by Cavalry for pennies on the dollar.

19. After purchasing the past-due and defaulted Account for pennies on the dollar, Cavalry, either directly or through intermediate transactions, assigned, placed, or transferred the Account with FRS for collection.

20. The Account was assigned to FRS for the purpose of collecting the Debt.

21. The Account was past-due and in default when it was placed with or assigned to FRS for collection.

22. At all times relevant hereto, FRS acted on behalf of Cavalry in an attempt to collect the Debt.

23. At all times relevant hereto, the acts and omissions of FRS were incidental to or taken within the scope of the responsibilities given and authorized by Cavalry.

**B. Threatening Suit on Time-Barred Debt**

24. Due to unforeseen financial circumstances, Plaintiff defaulted on the Account sometime in June or July 2011.

25. Cavalry contends that the Account became delinquent and in default June 10, 2011.

26. Upon default, a cause of action to enforce the Debt accrued.

27. Cavalry later allegedly purchased a pool of defaulted consumer accounts, including Plaintiff's Account, for pennies on the dollar.

28. In an attempt to collect the Debt, Defendants mailed a collection letter to Plaintiff on or about May 19, 2016 (the "Letter"). A true but redacted copy of the Letter is attached as ***Exhibit A***.

29. Plaintiff received and reviewed the Letter.

30. The Plaintiff is informed and believes, and on that basis alleges, that the terms governing the Account chooses the laws of the State of Nevada as the applicable law applying to the Account.

31. When Defendants sent the Letter, the four-year statute of limitations had run on the Account.

32. The Letter offers *settlements* on a time-barred debt.

33. Defendants regularly send collection letters offering to settle debts on which the statute of limitations has expired.

34. The Federal Trade Commission has found that "[m]ost consumers do not know their legal rights with respect to collection of old debts past the statute of limitations . . . . When a collector tells a consumer that she owes money and demands payment, it may create the misleading impression that the collector can sue the consumer in court to collect that debt." The FTC entered into a consent decree with Asset Acceptance, LLC, one of the largest debt buyers in the United States, requiring that it disclose to consumers when it is attempting to collect debts that are barred by the statute of limitations.[1]

35. On October 1, 2012, the Consumer Financial Protection Bureau, which has taken over much of the FTC's enforcement responsibility and has been granted rule-making authority with respect to debt collection, the Federal Deposit Insurance Corporation, the Federal Reserve Board, and the Office of the Comptroller of the Currency entered into consent orders with three American Express-related entities requiring disclosure that debts they attempt to collect were time-barred. 2012-CFPB-0002; 2012-CFPB-0003; 2012-CFPB-0004. The orders require that "the Bank shall continue to provide disclosures concerning the expiration of the Bank's litigation rights when collecting debt that is barred by the applicable state statutes of limitations . . ." (2012-CFPB-0002, p. 6 of 35, 2012-CFPB-0003, p. 5 of 28).

36. The October 1, 2012 orders further require disclosure of "all material conditions, benefits and restrictions concerning any offer of settlement. . . ." (2012-CFPB-0002, p. 7 of 35, 2012-CFPB-0003, p. 6 of 28). Thus, they recognize that collection letters that fail to disclose material information may be misleading.

---

[1] Press Release, Federal Trade Commission, Under FTC Settlement, Debt Buyer Agrees to Pay $2.5 Million for Alleged Consumer Deception (Jan. 30, 2012), http://www.ftc.gov/news-events/press-releases/2012/01/under-ftc-settlement-debt-buyer-agrees-pay-25-million-alleged (For the Consent Decree wherein Asset Acceptance promises to stop filing time-barred suits, see http://www.ftc.gov/enforcement/cases-proceedings/052-3133/asset-acceptance-llc).

37. On January 30, 2013, the FTC issued its report, The Structure and Practices of the Debt Buying Industry, available at http://www.ftc.gov/os/2013/01/debtbuyingreport.pdf. The report reaffirms its position in the United States of America v. Asset Acceptance, LLC, No. 8:12-cv-182-T-27EAJ (M.D. Fla. 2012), American Express Centurion Bank (FDIC-12-315b, FDIC-12-316k, 2012-CFPB-0002), American Express Bank, FSB (2012-CFPB-0003) and American Express Travel Company, Inc. (2012-CFPB-0004) cases, that a defendant may violate the FDCPA by sending a collection letter demanding payment of a time barred debt without disclosing that the debt was time barred.

38. The report cites to a study (Timothy E. Goldsmith & Natalie Martin, Testing Materiality Under the Unfair Practices Acts: What Information Matters When Collecting Time-Barred Debts?, 64 Consumer Fin. L.Q. Rep. 372 (2010)) that establishes the disclosure that a debt is time barred in a debt collection letter is material to the consumer.

39. "[A]n unsophisticated consumer could be misled by a dunning letter for a time-barred debt, especially a letter that uses the term 'settle' or 'settlement.'"[2]

40. Nothing in Defendants' letters disclosed that the debts were barred by the statute of limitations.

41. Nothing in Defendants' letters disclosed the date of the transactions giving rise to the debts.

---

[2] *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1022 (7th Cir. 2014); *see also Buchanan v. Northland Group*, 776 F.3d 393, 399 ("a 'settlement offer' with respect to a time-barred debt may falsely imply that payment could be compelled through litigation."); *Filgueiras v. Portfolio Recovery Assocs., LLC*, No. 15-8144 (JLL) (SCM), 2016 U.S. Dist. LEXIS 54672, at *23 (D.N.J. Apr. 25, 2016) ("When a debt collector offers to 'settle' a time-barred debt, it is plausible that the legal status of the debt has been misrepresented since it is plausible that an unsophisticated consumer would believe a letter that offers to 'settle' a debt implies that the debt is legally enforceable." (internal quotations marks and citations omitted)).

42. Nothing in Defendants' letters disclosed the date of default.

43. Nothing in Defendants' letters disclosed that the debt is legally unenforceable in a court of law.

44. Defendants' letters falsely imply that the accounts are legally enforceable.

45. The least sophisticated consumer would understand that Defendants would later sue to collection on the debts.

46. Nothing in Defendants' letters disclosed the legal consequences of a settlement or a payment.

47. Nothing in Defendants' letters disclosed that a settlement or a payment would restart the statute of limitations.

48. It is Defendants' policy and practice to send collection letters in an attempt to collect time-barred consumer debts that do not disclose that the debt was barred by the statute of limitations and that do not disclose the legal consequences of a payment or settlement.

49. Such practice is a deceptive collection ploy used to entice a least sophisticated consumer with settlement offers in order to have the least sophisticated consumer make payments on an otherwise unenforceable debt.

50. In fact, Defendants' representations of savings is false as the debts are unenforceable in a court of law.  Such savings do not exist as Plaintiff would have a complete statute of limitations defense to the debts.

51. Such practice is a deceptive collection ploy used to entice a least sophisticated consumer with settlement offers in order to have the least sophisticated consumer make a payment or enter into a new agreement that would restart the statute of limitations, when in fact such savings are nonexistent and false.

52. Defendants engaged in unfair and deceptive acts and practices, in violation of 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), and 1692f, by sending letters which attempted to *settle* time-barred debts without disclosure of that fact, without disclosing the legal consequences thereof, and which falsely represents the benefits of the offers/options.

C. **Threatening Tax Consequences**

53. The Letter offers three settlement options on the alleged balance of $410.31: (1) one payment of $205.16; (2) three payments totaling $235.92; and (3) six payments totaling $266.70.

54. The Letter then threatens that "[t]his settlement may have tax consequences. Please consult your tax advisor."

55. Defendant's statement that "[t]his settlement may have tax consequences" is false, deceptive and misleading.[3]

---

[3] *Good v. Nationwide Credit, Inc.*, 55 F. Supp. 3d 742, 749-50 (E.D. Pa. 2014); *see also Balon v. Enhanced Recovery Co.*, No. 3:16-CV-0410, 2016 U.S. Dist. LEXIS 72142, at *19-20 (M.D. Pa. June 2, 2016) ("the challenged language could, without bizarre or idiosyncratic interpretation, influence the least sophisticated debtor's decision-making process. As a result, it is determined that the challenged language is material." (internal quotations marks and citation omitted)); *Velez v. Enhanced Recovery Co., LLC*, No. 16-164, 2016 U.S. Dist. LEXIS 57832, at *10 (E.D. Pa. May 2, 2016) ("There are myriad other ways that the Statement could, without bizarre or idiosyncratic interpretation, influence the least sophisticated debtor's decision-making process."); *Foster v. AllianceOne Receivables Mgmt.*, No. 15-cv-11108, 2016 U.S. Dist. LEXIS 56958, at *5-6 (N.D. Ill. Apr. 28, 2016) ("It is plausible that mention of the IRS in a situation where there is no set of circumstances in which the IRS would be involved could mislead 'a person of modest education and limited commercial savvy.'"); *Pape v. Law Offices of Frank N. Peluso, P.C.*, No. 3:13 CV 63 (JGM), 2016 U.S. Dist. LEXIS 694, at *27-8 (D. Conn. Jan. 5, 2016) (Statement that "[w]e may also report this to the IRS as Debt Cancellation Income pursuant to IRS Reg. § 1.61-12 if payment is not received" violates the FDCPA where "defendant . . . could not report the cancellation of plaintiff's debt to the IRS[.]"); *Wagner v. Client Services, Inc.*, Case No. 08-5546, 2009 U.S. Dist. LEXIS 26604, at *12, 2009 WL 839073 (E.D. Pa., March 26, 2009) ("By failing to attribute the nature of the debt that may be discharged to principal and non-principal amounts, Defendant has not shown that its letter is literally true."); *Kuehn v. Cadle Co.*, Case No. 5:04-cv-432, 2007 U.S. Dist. LEXIS 25764, 2007 WL 1064306 (M.D. Fla., April 6, 2007) (This includes a statement that a 1099 must be issued when a 1099 is not required.).

56. At some point after Plaintiff's alleged default, the original creditor of the Account determined that the Debt was uncollectable, and therefore decided to "charge-off" the debt.

57. Creditors charge-off debts in accordance with federal regulations that permit the creditor to remove the debt from their financial records.[4] These charged-off accounts are treated as a loss and the creditor receives a tax deduction under the Internal Revenue Code.

58. Defendants contend that the Account charged-off on December 31, 2011.

59. The charge-off balance was $229.

60. Therefore, upon information and belief, the principle amount of the Debt is less than $229.

61. Therefore, at the very least, settlement offers number two and three in the Letter will never cause Plaintiff to have "tax consequences."

62. Upon information and belief, all three settlement offers made in the Letter will never have tax consequences because Plaintiff would be forgiven any principle amount—in other words, Plaintiff would be paying the entire principle amount.

63. Furthermore, when Plaintiff received Defendants' Letter, Plaintiff was insolvent.

64. Discharge of indebtedness will not result in taxable income if the debt is insolvent, dispute, or the discharged amount is of non-principle amounts.

65. Thus, the three settlement offers will not result in taxable income to Plaintiff.

---

[4] By charging off the Account, the Debt had been in default for a period of approximately 180 days. *See* Uniform Retail Credit Classification and Account Management Policy, 65 Fed. Reg. 36903 (June 12, 2000); *see also* Victoria J. Haneman, *The Ethical Exploitation of the Unrepresented Consumer*, 73 Mo. L. Rev. 707, 713-14 (2008) ("a credit card account is characterized as a 'charge-off' account (or worthless account for taxable purposes) when no payment has been received for 180 days.").

66. The Department of Treasury regulations require an "applicable entity"[5] to report a discharge of indebtedness over $600 to the Internal Revenue Services if and only if there has been an "identifiable event,"[6] subject to seven exceptions.[7]

67. Such exceptions to the reporting requirement include if the consumer files and obtains a bankruptcy discharge on a consumer debt, or any interest or non-principle amounts.[8]

68. The statement that "[t]his settlement may have tax consequences" is false and misleading to Plaintiff, as well as the least sophisticated consumer, because the balances of the Debt is less than $600—thus, there can never be a discharge of indebtedness over $600 in principle amount. Neither Defendants are required to report to the IRS and will never do so.

69. Such false statement is deceptive and misleading because the statement conveys to Plaintiff and the least sophisticated consumer that there are consequences to paying or settling the debt for less than what was alleged to be owed.

70. Such false statement is deceptive and misleading because the statement conveys to Plaintiff and the least sophisticated consumer that one may face negative tax consequences with the Internal Revenue Service for paying or settling the debt for less than what was alleged to be owed.

71. Such false statement is deceptive and misleading because the statement deliberately fails to disclose that such reporting is required under only limited circumstances.

72. Such false statement is deceptive and misleading because the statement deliberately fails to disclose that such reporting requirement is subject to seven exceptions.

---

[5] "Applicable entity" is defined in 26 U.S.C. § 6050P(c)(1).
[6] As described in 26 Treas. Reg. § 1.6050P-1(b)(2).
[7] *See* 26 Treas. Reg. § 1.6050P-1(a)(1), (d).
[8] 26 Treas. Reg. § 1.6050P-1(d)(1)-(3).

73. Such false statement is deceptive and misleading because the statement deliberately fails to disclose that such reporting will never happen if Plaintiff accepts any of the three settlement offers.

74. Defendants' statement invoking the IRS is a collection ploy and a deceptive tactic used to trick Plaintiff and the least sophisticated consumer that paying less than the full amount owed or not paying at all would have serious tax implications or otherwise be in trouble with the IRS.

75. In fact, Defendants deliberately state that "[t]his settlement may have tax consequences"—even when the three settlement offers will never result in tax consequences—as "a 'collection ploy designed to deceive or mislead' the consumer into thinking that the IRS could be involved in their debt where there is no set of circumstances in which the IRS would be involved."[9]

76. Defendants' false, deceptive and misleading statement is material to Plaintiff and the least sophisticated consumer because, *inter alia*:

> a. the implicit invocation of the IRS, the threatening of tax consequences, and use of the misleading and false statement effects the decision-making of Plaintiff and the least sophisticated consumer;
>
> b. Plaintiff and the least sophisticated consumer are less likely to negotiate the balances down and are more likely succumb to the threat by making substantially higher payments;
>
> c. Plaintiff and the least sophisticated consumer would believe that in order not to be reported to the IRS or have tax consequences, one must pay the full balance regardless of whether the event is reportable or taxable;

---

[9] *Foster v. AllianceOne Receivables Mgmt.*, No. 15-cv-11108, 2016 U.S. Dist. LEXIS 56958, at *5 (N.D. Ill. Apr. 28, 2016)

  d. The statement creates confusion of the legal and tax implication as the alleged indebtedness is not always *taxable* nor always reported to the IRS; and

  e. The statement negatively influences someone contemplating for obtaining bankruptcy relief, as Plaintiff and the least sophisticated consumer would believe that one would be faced with negative legal and tax consequences if the debt is wiped out through bankruptcy.

## V. CLASS ACTION ALLEGATIONS

77. Plaintiff brings this action individually and as a class action on behalf of all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

78. Subject to discovery and further investigation which may cause Plaintiff to expand, restrict or modify the following class definition at the time Plaintiff moves for class certification, Plaintiff seeks certification of a class and a subclass initially defined as follows:

> **Time-barred Class**: All natural persons with an address within in the State of New Jersey to whom, beginning May 18, 2016 through and including the final resolution of this case, Defendants sent one or more letter(s) offering a settlement of a consumer debt, on which the statute of limitations had expired prior to the date of the letter.
>
> **Tax Consequences Class**: All natural persons with addresses within the State of New Jersey to whom, beginning May 18, 2016 through and including the final resolution of this case, Defendants sent one or more letter(s) in attempts to collect a consumer debt, which contained the same or substantially similar statement: "This settlement may have tax consequences."

79. Plaintiff seeks to recover statutory damages, actual damages, attorney's fees and costs on behalf of all class members under the Fair Debt Collection Practices Act.

80. The class for whose benefit this action is brought is so numerous that joinder of all members is impracticable.

81. There are questions of law and fact common to the members of the class that predominate over questions affecting only individuals, including but not limited to:

  A. Whether Defendants are a debt collector under the FDCPA;

      B.    Whether Defendants violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(2)(A), 1692e(5), 1692e(8), 1692e(10), 1692f and 1692f(1);

      C.    Whether Plaintiff, the class are entitled to damages;

82.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. The FDCPA statutory scheme provides for statutory damages payable to each class member. A class action will cause an orderly and expeditious administration of the claims of the class and will foster economies of time, effort and expense.

83.    Plaintiff's claims are typical of the claims of the members of the class.

84.    The questions of law and/or fact common to the members of the class predominate over any questions affecting only individual members.

85.    Plaintiff does not have interests antagonistic to those of the class.

86.    The class, of which Plaintiff is a member, are readily identifiable.

87.    Plaintiff will fairly and adequately protect the interests of the class, and has retained competent counsel experienced in the prosecution of consumer litigation.  Proposed Class Counsel have investigated and identified potential claims in the action; have a great deal of experience in handling consumer class actions and other complex litigation, and claims of the type asserted in this action.

88.    The prosecution of separate actions by individual members of the class would run the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the Defendants in this action or the prosecution of separate actions by individual members of the class would create the risk that adjudications with respect to individual members of the class and subclass would as a practical matter be dispositive of the interests of the other

members not parties to the adjudications or substantially impair or impede their ability to protect their interests.  Prosecution as a class action will eliminate the possibility of repetitious litigation.

89. Plaintiff does not anticipate any difficulty in the management of this litigation.

### VI.   FIRST COUNT: VIOLATIONS OF THE FDCPA

90. Plaintiff, on behalf of herself and others similarly situated, reasserts and incorporates herein the allegations contained in the preceding and following paragraphs.

91. Plaintiff and those similarly situated are "consumers" as defined by 15 U.S.C. § 1692a(3) because they are natural persons allegedly obligated to pay a debt, in which the money, property, insurance, or services, which was the subject of the transaction, was primarily for personal, family and/or household purposes.

92. The debts alleged to be owed by the Plaintiff and those similarly situated are consumer "debts" as defined by 15 U.S.C. § 1692a(5).

93. Defendants are "debt collectors" as defined by 15 U.S.C. § 1692a(6) and the interpretations thereof.

94. Defendants' Letter, copy of which appear as Exhibit A, is a "communication" as defined by 15 U.S.C. § 1692a(2).

95. The letters, which references a "settlement," sent to numerous consumers are "communications" pursuant to 15 U.S.C. § 1692a(2).

96. By sending numerous collection letters on time-barred debts that referenced a "settlement" violated sections 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10) and 1692f of the FDCPA.

97. By sending numerous collection letters that misleadingly and deceptively invoked the Internal Revenue Service, threatened negative tax consequences and contained inaccurate

statements regarding the tax consequences of a settlement, Defendant violated sections 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(4), 1692e(5), 1692e(8), 1692e(10), and 1692f of the FDCPA.

98. The violations of the FDCPA described herein constitute *per se* violations.

99. Based on any one or more of those violations, Defendants are liable to Plaintiff and those similarly situated for damages, attorney's fees and costs under 15 U.S.C. § 1692k.

## VII.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Lynn Antista, on behalf of herself and others similarly situated, demands judgment against Defendants, Financial Recovery Services, Inc., and Cavalry SPV I, LLC as follows:

A. For certification of this instant matter as a class action, appointing the named Plaintiff as representative of the class, and appointing the attorneys of Kim Law Firm LLC as class counsel;

B. For statutory damages in favor of Plaintiff pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i) or, in the alternative, 15 U.S.C. § 1692k(a)(2)(A);

C. For statutory damages in favor of each class pursuant to 15 U.S.C. § 1692k(a)(2)(B)(ii);

D. For actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

E. For attorney's fees, litigation expenses and costs in connection with this action pursuant to 15 U.S.C. § 1692k(a)(3);

F. For pre-judgment and post-judgment interest; and

G. For such other and further relief as the Court deems equitable and just.

## VIII.   JURY DEMAND

Plaintiff demands trial by jury as to all claims and defenses.

## IX.   CERTIFICATION

Pursuant to Local Civil Rule 11.2, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding except:

- *Maisano v. Cavalry SPV I, LLC et al*, 2:17-cv-2868-JMV-JBC (D.N.J.);
- *Mendoza v. Cawley & Bergmann, LLP et al*, 2:16-cv-9517-CCC-MF (D.N.J.).

KIM LAW FIRM LLC

s/ Yongmoon Kim
Yongmoon Kim
*Attorneys for Plaintiff on behalf of herself and those similarly situated*

Dated: May 18, 2017