## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LYNN ANTISTA, on behalf of herself & those similarly situated,<br><br>Plaintiff,<br><br>*vs*.<br><br>FINANCIAL RECOVERY SERVICES, INC., CAVALRY SPV I, LLC, and JOHN DOES 1 TO 10,<br>Defendants. | Case 2:17-cv-03567-WJM-MF |

## BRIEF ON BEHALF OF
## PLAINTIFF, LYNN ANTISTA
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS [DOC. 8]

## RETURNABLE: NOVEMBER 6, 2017
## [ORAL ARGUMENT REQUESTED]

Philip D. Stern, *on the Brief*
Andrew T. Thomasson, *on the Brief*
STERN•THOMASSON LLP
150 Morris Avenue, 2nd Floor
Springfield, New Jersey 07081-1315
(973) 379-7500

*Attorneys for Plaintiff, Lynn Antista*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ............................................................................................... 1

PROCEDURAL HISTORY .................................................................................. 2

STATEMENT OF FACTS ................................................................................... 3

STANDARD OF REVIEW ................................................................................... 6

LEGAL ARGUMENTS ....................................................................................... 10

    POINT I:    THERE WOULD NEVER BE ANY TAX
                 CONSEQUENCES FROM ACCEPTING ONE OF THE
                 OFFERED SETTLEMENTS .............................................................. 11

    POINT II:   THE CONDITIONAL TAX DISCLOSURE IS
                 MISLEADING ................................................................................ 12

    POINT III:  DEFENDANTS' RELIANCE ON OUT-OF-CIRCUIT
                 DISTRICT COURT DECISIONS IS UNAVAILING. ................ 18

CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal,*
　　556 U.S. 662 (2009)............................................................ 6, 7, 8

*Balon v. Enhanced Recovery Co., Inc.,*
　　190 F. Supp. 3d 385 (M.D. Pa. 2016)...........................................17

*Bell Atl. Corp. v. Twombly,*
　　550 U.S. 544 (2007)........................................................6, 7

*Brown v. Card Service Center,*
　　464 F.3d 450 (3d Cir. 2006) ......................................................16

*Buck v. Hampton Twp. Sch. Dist.,*
　　452 F.3d 256 (3d Cir. 2006) ........................................................8

*Burrell v. DFS Servs., LLC,*
　　753 F. Supp. 2d 438 (D.N.J. 2010)................................................9

*Clomon v. Jackson,*
　　988 F.2d 1314 (2d Cir. 1993) ....................................................11

*Disla v. Northstar Location Servs., LLC,*
　　No. 16-CV-4422-CCC, 2017 WL 2799691 (D.N.J. June 27, 2017)............17

*Douglass v. Convergent Outsourcing,*
　　765 F.3d 299 (3d Cir. 2014) ......................................................10

*Dunbar v. Kohn Law Firm SC,*
　　No. 17-CV-88, 2017 WL 1906748, at *5 (E.D. Wis. May 8, 2017)
　　*appeal pending*...................................................... 18, 19

*Everett v. Fin. Recovery Servs., Inc.,*
　　No. 116CV01806JMSMPB, 2016 WL 6948052, at *6 (S.D. Ind. Nov.
　　28, 2016) ............................................................... 18, 19

*Fowler v. UPMC Shadyside,*
　　578 F.3d 203 (3d Cir. 2009) ........................................................7

*Garr v. U.S. Healthcare, Inc.,*
　　22 F.3d 1274 (3d Cir. 1994) ......................................................14

*Glassman v. Computervision Corp.*,
90 F.3d 617 (1st Cir.1996)................................................................9

*Gonzales v. Arrow Fin. Servs., LLC*,
660 F.3d 1055 (9th Cir. 2011) ................................................ 13, 17

*Good v. Nationwide Credit, Inc.*,
55 F. Supp. 3d 742 (E.D. Pa. 2014)............................ 14, 15, 17, 19

*Grden v. Leikin Ingber & Winters PC*,
643 F.3d 169 (6th Cir. 2011) ........................................................16

*Hovermale v. Immediate Credit Recovery Inc.*,
No. CV 15-5646 (RBK/JS), 2016 WL 4157160 (D.N.J. Aug. 4, 2016) .......12

*Hoxworth v. Blinder, Robinson & Co., Inc.*,
903 F.2d 186 (3d Cir. 1990) .........................................................16

*In re Burlington Coat Factory Litig.*,
114 F.3d 1410 (3d Cir.1997) ..........................................................9

*New Jersey Carpenters v. Tishman Const. Corp.*,
760 F.3d 297 (3d Cir. 2014) ...........................................................8

*Remington v. Fin. Recovery Servs., Inc.*,
No. 3:16-CV-865 (JAM), 2017 WL 1014994 (D. Conn. Mar. 15, 2017) ...............................................................................................18

*Taylor v. Fin. Recovery Servs., Inc.*,
252 F. Supp. 3d 344, 2017 WL 2198980 (S.D.N.Y. 2017) *appeal pending*............................................................................... 18, 19

*Velez v. Enhanced Recovery Co., LLC*,
No. CV 16-164, 2016 WL 1730721 (E.D. Pa. May 2, 2016).......................17

*W. Penn Allegheny Health Sys., Inc. v. UPMC*,
627 F.3d 85 (3d Cir. 2010) ..............................................................8

*Zarin v. C.I.R.*,
916 F.2d 110 (3d Cir. 1990) ..........................................................13

## STATUTES

15 U.S.C. § 1692a(3) ......................................................................10

15 U.S.C. § 1692a(5) ...............................................................................10

15 U.S.C. § 1692e ............................................................................ passim

15 U.S.C. § 1692f................................................................................10

## RULES

Fed. R. Civ. P. 12(b)(6)........................................................................6, 9

## OTHER AUTHORITIES

*Statements of General Policy or Interpretation, Staff Commentary on the*
    *Fair Debt Collection Practices Act,*
    53 Fed. Reg. 50097 (Dec. 13, 1988).............................................16

## INTRODUCTION

While attempting to collect a debt, Defendants sent a collection letter proposing three settlement options for less than the full balance owed. The letter stated that settling may trigger tax consequences but Plaintiff, who was insolvent, would never have any tax consequences.

Defendants move to dismiss. Thus, Plaintiff's allegations are accepted as true as well as reasonable inference favorable to her. As such, the tax consequences statement was made for purpose of attempting collection of a debt. Having failed to disclose the circumstances when there would be no tax consequences, the statement was misleading.

Defendants' Motion did not contest Plaintiffs claims concerning their attempt to collect on a time-barred debt.

Therefore, Defendants' Motion should be denied.

## PROCEDURAL HISTORY

Plaintiff, Lynn Antista filed the Class Action Complaint ("CAC") on May 18, 2017. Doc. 1. The two named Defendants, Financial Recovery Services, Inc. ("FRS") and Cavalry SPV I, LLC ("Cavalry") waived service of process. Docs. 3 and 4.

On August 4, 2017, FRS and Cavalry jointly filed a Motion to Dismiss [Doc. 8] with a Brief ("Motion Brief") [Doc. 9]. Following a request on consent [Doc. 14], the return date of the Motion is presently scheduled for November 6, 2017.

Antista now submits this Brief in opposition to the Motion [Doc. 8].

## STATEMENT OF FACTS

Plaintiff, Lynn Antista is a natural person. CAC ¶4.

FRS is a debt collector. CAC ¶5. Cavalry purchases defaulted consumer debts. CAC ¶6. Both FRS and CAC regularly collect or attempt to collect debts which arise from transactions primarily for personal, family or household purposes. CAC ¶10.

Defendants alleged Antista owed a financial obligation ("Debt") from an HSBC Bank Nevada, N.A. account. CAC ¶15. The Debt arose from transactions which were primarily for Antista's personal, family or household purposes. CAC ¶16. Defendants contend the Debt is in default. CAC ¶17. Moreover, the Debt was in default when Cavalry purchased it and, after purchasing it, Cavalry sent it to FRS to attempt collection. CAC ¶¶18 & 19.

The Debt was past-due and in default when Cavalry placed it with FRS for collection and FRS then acted on Cavalry's behalf to attempt collection. CAC ¶¶21 & 22.

In an attempt to collect the Debt, FRS mailed a letter ("Letter") to Antista dated May 19, 2016. CAC ¶28. A redacted copy of Letter is attached to the CAC as Exhibit A. Doc. 1-1.

Antista received the Letter. CAC ¶29. At that time, she was *insolvent*. CAC ¶63.

The Letter's opening sentence stated the Debt had been assigned to FRS "for collection." Doc. 1-1. The Letter also stated:

> This is an attempt to collect a debt.
>
> Any information obtained will be used for that purpose.
>
> This communication is from a debt collector.

Doc. 1-1.

FRS's role and the Letter's stated purpose establish (at least for purposes of Rule 12(b)(6)) all of the Letter's contents were for the purpose of inducing payment unless FRS had an independent obligation to include information.

Thus, the Letter provided information about the Debt including the names of the original and current creditors (HSBC and Cavalry, respectively), the charge-off date (December 31, 2011), and the balance due ($410.31). Doc. 1-1.

Immediately following that sentence, FRS included Antista's dispute rights as required by 15 U.S.C. § 1692g. Specifically, the Letter disclosed Antista's right to dispute the validity of the Debt or any portion of it. Doc. 1-1. That disclosure manifests FRS's inability to know whether Antista disputed the Debt until 30 days *after* Antista received the Letter.

The Letter then proceeded to propose three settlement options but prefaced them by stating they "do not affect" Antista's dispute rights. Doc. 1-1. After itemizing the settlement offers, the Letter included the following "Tax Disclosure"

which stated:

> This settlement may have tax consequences. Please consult a tax advisor. FRS is not a law firm and FRS will not initiate any legal proceedings or provide you with legal advice. The offers of settlement in this letter are merely offers to resolve your account for less than the balance due.

Doc. 1-1.

Defendants do not contend there was any obligation to provide the Tax Disclosure. Therefore, its inclusion must be considered as being in furtherance of Defendants' attempt to collect the Debt.

## STANDARD OF REVIEW

Defendants move under Fed. R. Civ. P. 12(b)(6) to dismiss the CAC. The Rule permits dismissal when a complaint "fail[s] to state a claim upon which relief can be granted." *Id.* Under the Supreme Court's decisions in *Iqbal* and *Twombly*, the plausibility standard assesses a complaint's sufficiency.

In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court tested a complaint's sufficiency for purposes of Rule 12(b)(6) by applying the "plausibility standard." *Twombly*, at 560. The complaint alleged that the defendants violated the Sherman Act by restraining trade in a contract, combination, or conspiracy. *Twombly,* at 548. The complaint, however, alleged the defendants' parallel behavior. *Twombly*, at 550. Parallel behavior, while *circumstantial* evidence of a contract, combination, or conspiracy, is not *sufficient* evidence of one. *Twombly*, at 553. Concluding that the complaint should be dismissed for failure to state a claim, the Court wrote:

> This case presents the antecedent question of what a plaintiff must plead in order to state a claim under § 1 of the Sherman Act. Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

> Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact). [*Twombly*, at 554-6 (internal quotation marks and citations omitted).]

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) permitted the Supreme Court to elaborate on *Twombly*'s plausibility standard. The complaint claimed that the U.S. Attorney and FBI Director deprived the plaintiff of his constitutional rights while in custody. The complaint did allege facts showing that, when in prison, Iqbal was subjected to unconstitutional misconduct *by some governmental actors*. The complaint did not allege, however, facts connecting the defendants to that misconduct.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. ***A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged***. [*Iqbal* at 678 (emphasis added; internal quotation marks and citations omitted).]

The Third Circuit synthesized *Iqbal* and *Twombly* in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009):

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [internal citations omitted.]

The Third Circuit has also explained that:

> A complaint has facial plausibility when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*New Jersey Carpenters v. Tishman Const. Corp.*, 760 F.3d 297, 302 (3d Cir. 2014) (quoting *Iqbal*).]

The Court of Appeals has cautioned—as did *Iqbal*—that the standard "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (internal quotation marks omitted).

The motion record to be reviewed can include the factual allegations in the complaint which are accepted as true and viewed "in the light more favorable to plaintiff," "documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (internal marks and citations omitted).

Defendants' position on the standard of review is consistent.

Applying that standard, the CAC plausibly alleged facts sufficient to prove a violation of the FDCPA by a debt collector while attempting to collect a consumer debt. Therefore, Defendants' Motion should be denied.

If, however, the Court were to conclude that some deficiency exists, Plaintiff

should be permitted to amend. As has been explained:

> When a claim is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), leave to amend and reassert that claim is ordinarily granted. *In re Burlington Coat Factory Litig.,* 114 F.3d 1410, 1434 (3d Cir.1997). A claim may be dismissed with prejudice, however, if amending the complaint would be futile. *Id.* "Futile," as used in this context, means that the complaint could not be amended to state a legally-cognizable claim. *Id.* (citing *Glassman v. Computervision Corp.,* 90 F.3d 617, 623 (1st Cir.1996)).

*Burrell v. DFS Servs., LLC*, 753 F. Supp. 2d 438, 444 (D.N.J. 2010).

## LEGAL ARGUMENTS

The CAC alleged a plausible violation of the FDCPA arising from the mailing and receipt of Defendants' Letter sent to collect a debt.

> To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a "debt" as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt.

*Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014).

By their silence, Defendants implicitly conceded the CAC alleged facts establishing the first three elements. Thus, Antista is a consumers (as defined at 15 U.S.C. § 1692a(3)) because she is a natural person alleged to owed a debt. Defendants are debt collectors because they either regularly attempt to collect debts for others or their principal purpose is the collection of dents. Defendants attempted to collect a credit card debt which was a financial obligation arising from a transaction for personal purposes which is debt (as defined by 15 U.S.C. § 1692a(5)).

Thus, the focus here is on the fourth element: whether Defendants violated the FDCPA.

Defendants' Motion did not address Antista's claim based on the failure to disclose the Debt was time-barred in violation of 15 U.S.C. § 1692e and § 1692f.

page **10** of 20

CAC ¶¶24-52. By omission, Defendants concede Antista plausibly alleged those violations. The CAC (at footnote 2) cited decisions from the Seventh Circuit and this District in support of that claim. As only a single violation is necessary for liability under the FDCPA, Defendants' Motion should be denied. *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993).

Defendants' Motion instead addressed only the claim based on the Tax Disclosure which stated, "This settlement may have tax consequences." The Tax Disclosure was false because Antista's insolvency meant there would *never* be any tax consequences. Even if the Tax Disclosure were technically true, it was made for the purpose of collecting a debt and the failure to explain when it would apply was a half-truth and misleading in violation of § 1692e.

**POINT I:    THERE WOULD NEVER BE ANY TAX CONSEQUENCES FROM ACCEPTING ONE OF THE OFFERED SETTLEMENTS.**

The CAC alleged Plaintiff was insolvent when she received the Letter. CAC ¶63. Due to her insolvency, none of the three settlement offers would *ever* result in taxable income to Antista. CAC ¶65. Consequently, the Tax Disclosure is false: Plaintiff's acceptance of any settlement offer will not result in tax consequences.

The CAC alleged that a discharge of indebtedness would not result in taxable income when a debtor is insolvent, or the debt is disputed. CAC ¶64. Notwithstanding the CAC's allegations, Defendants' Motion Brief failed to

address that Antista's insolvency would never result in any tax consequence to her. Yet, in IRS Tax Topic 431 and in IRS Publications 525, 4681 and 4731—all cited in Defendants' Motion Brief—insolvency is expressly stated as an exception to including cancelled debt as income. [1]

A debt collector's conditional statement violates the FDCPA when there are no conditions under which the statement could be true. *See, e.g., Hovermale v. Immediate Credit Recovery Inc.*, No. CV 15-5646 (RBK/JS), 2016 WL 4157160 (D.N.J. Aug. 4, 2016) (statement that balance "may" increase due to late charges violated FDCPA when late charges could never accrue on defaulted loan). Thus, the Tax Disclosure was false in violation of 15 U.S.C. § 1692e.

**POINT II:    THE CONDITIONAL TAX DISCLOSURE IS MISLEADING.**

The Tax Disclosure served no purpose other than as an attempt to collect the Debt. Indeed, the entire paragraph appears to be a collection ploy to encourage consumers to pay more than the proposed settlement.

> This settlement may have tax consequences. Please consult your tax advisor. FRS is not a law firm and FRS will not initiate any legal proceedings or provide you with legal advice. The offers of settlement in this letter are merely offer to resolve

---

[1] To be more accurate with respect to Publication 4731, it is a "Screening Sheet" for volunteer programs explaining how to put information from Form 1099-C into a taxpayer's income tax return and directs the volunteer to refer the taxpayer to other services when the taxpayer was insolvent because "the rules involved are complex."

your account for less than the balance due. [Doc. 1-1.]

The settlement offers proposed a savings of $144 to $205. Yet, to someone who was unable to pay her debts, the Letter suggests the consumer's need to obtain tax and legal advice before agreeing to settle. A least sophisticated consumer could reasonably conclude it is necessary to pay the full $410 and save both the time/expense of hiring legal/tax advisors and avoid the looming "tax consequences."

Even if the Tax Disclosure were technically correct because there may be conditions when accepting the offered settlement will have tax consequences, such "[c]onditional language, particularly in the absence of any language clarifying or explaining the conditions, does not insulate a debt collector from liability." *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1063 (9th Cir. 2011).

Defendants sent the Letter without any information as to whether there would be *any* tax consequences. In addition to the insolvency exclusion mentioned in the IRS materials cited by Defendants and in Point I, above, the Third Circuit has held that a disputed debt which is settled for less than the full amount claimed is also not includable as income. *Zarin v. C.I.R.*, 916 F.2d 110 (3d Cir. 1990). Yet, Defendants could not possibly know whether the Debt was disputed when sending the Letter. Rather, the Letter expressly informed Antista of her right to dispute the Debt within 30 days *after* she received it and that Defendants could *not* assume the

Debt was valid until the 30-day period expired without being notified the Debt was disputed. Conversely, Defendants could not know whether the Debt was disputed until *after* sending the Letter.

It is reasonable to conclude many consumers receiving the same Letter would either be insolvent or disputing the debt and, therefore, not subject to any tax consequences. Neither insolvency nor a dispute would have been known to Defendants when sending the Letter but they nevertheless included the Tax Disclosure for collection purposes even though there is no requirement under the FDCPA to include such language in the Letter.

Thus, Defendants' Tax Disclosure was nothing more than a shot in the dark, and "A shot in the dark is a sanctionable event, even if it somehow hits the mark." *Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1279 (3d Cir. 1994).

Defendants correctly pointed to decisions such as *Good v. Nationwide Credit, Inc.*, 55 F. Supp. 3d 742 (E.D. Pa. 2014). While *Good* dealt with a misleading statement as to the creditor's reporting debt cancellation to the IRS on Form 1099-C, the rationale is particularly insightful here. The court declined the debt collector's invitation, like that suggested by Defendants here, to consider the statement as "a helpful notification regarding the potential consequences of a debtor's choice." *Id.* at 748. Here, like in *Good*, the consumer's tax obligation or lack of any obligation does not change because of the Letter's inclusion or

exclusion of the Tax Disclosure. Thus, absent some obligation or explanation for including the statement, *Good* doubted the collector's purpose for including it. *Id.*

The court in *Good* recognized "[t]he mere invocation of the IRS reasonably suggests to the least sophisticated consumer that he or she could get in trouble with the IRS for refusing to pay" the full amount of the debt. *Good*, at 748 (internal quotation marks omitted). While the Tax Disclosure here did not expressly mention the IRS, it is plainly implied. The Tax Disclosure warns there may be tax consequences and then it directs the consumer to seek out a tax advisor. Doc. 1-1. Thus, the concern raised in *Good* that the consumer will be concerned about getting in trouble with the taxing authorities arises under both the language in *Good* and the Tax Disclosure here.

It bears repeating: the Tax Disclosure must be viewed in the light of the Letter's purpose: to collect a debt. By offering settlement options of $205 to $267 against a $410.31 balance and warning that settlement resolves "your account for less than the balance due" and "may have tax consequences," the Letter implies that paying the full amount will not have tax consequences and will avoid the need to consult a tax or legal advisor. Such a conclusion is particularly required under the standard of review on a Rule 12(b)(6) motion. Thus, "[d]rawing all reasonable inferences in favor of the non-moving party, the Court can properly infer that the statement is a 'collection ploy.'" *Good*, at 748.

The Federal Trade Commission addressed this true-but-misleading issue in its *Statements of General Policy or Interpretation, Staff Commentary on the Fair Debt Collection Practices Act,* 53 Fed. Reg. 50097 (Dec. 13, 1988). Addressing the prohibition in 15 U.S.C. § 1692e(5) against the "threat to take any action that cannot legally be taken or that is not intended to be taken," the FTC concluded:

> [a] debt collector may not state or imply that he or any third party may take any action unless such action is legal and there is a reasonable likelihood, at the time the statement is made, that such action will be taken. A debt collector may state that certain action is possible, if it is true that such action is legal and is frequently taken by the collector or creditor with respect to similar debts; *however, if the debt collector has reason to know there are facts that make the action unlikely in the particular case, a statement that the action was possible would be misleading*.

FTC Commentary, 53 Fed. Reg. at 50106 (emphasis added).

Section 1692e gives consumers the right to a debt collector's complete honesty because some truthful statements standing alone can nevertheless mislead. *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 172 (6th Cir. 2011). Similarly, deception law in this Circuit has long recognized that, as goes the old proverb, "a half-truth is a whole lie." *See, e.g., Brown v. Card Service Center,* 464 F.3d 450, 453-54 (3d Cir. 2006) (deceptive threat of suit); *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 202 (3d Cir. 1990) (recognizing half-truths as "analytically ... closer to lies than to nondisclosure").

Even if the Tax Disclosure were technically true, as a conditional statement which omits the conditions is nevertheless misleading. "[T]he word 'may' does not sufficiently communicate that there are exceptions." *Disla v. Northstar Location Servs., LLC*, No. 16-CV-4422-CCC, 2017 WL 2799691, at *5 (D.N.J. June 27, 2017).

In *Disla*, the collector's letter explained that a forgiveness of debt "may be considered a taxable event." *Id.* at *1. The consumer contended "a debtor could understand this notice to mean that settling the debt for less than the full amount would have tax consequences with the IRS, thus incentivizing the debtor to pay the full amount." *Id.* Noting that *Good*, *Balon v. Enhanced Recovery Co., Inc.*, 190 F. Supp. 3d 385 (M.D. Pa. 2016), and *Velez v. Enhanced Recovery Co., LLC*, No. CV 16-164, 2016 WL 1730721 (E.D. Pa. May 2, 2016) each rejected the argument that the conditional "may" saved the statement regarding tax issues, the court concluded the debt collector's generalized statement as to what "may" happen was misleading because it omitted the circumstances when the statement would not apply. "Conditional language, particularly in the absence of any language clarifying or explaining the conditions, does not insulate a debt collector from liability." *Gonzales*, at 1063.

Disclosing that there would be no tax consequences if the consumer were insolvent or disputed the debt, however, would undermine the Letter's purpose.

Instead, it would cause consumers to dispute the debt and to investigate whether they were insolvent—actions which would not be in Defendants' interest. Thus, even if Antista were not insolvent, the Tax Disclosure would nevertheless be misleading in violation of 15 U.S.C. § 1692e.

**POINT III:   DEFENDANTS' RELIANCE ON OUT-OF-CIRCUIT DISTRICT COURT DECISIONS IS UNAVAILING.**

Defendants cited *Taylor v. Fin. Recovery Servs., Inc.*, 252 F. Supp. 3d 344, 2017 WL 2198980 (S.D.N.Y. 2017) *appeal pending* as authority for their use of the Tax Disclosure. Although *Taylor* involved the same Tax Disclosure, the consumer did not make the arguments raised here. There, the consumer argued the Tax Disclosure could cause the least sophisticated consumer to "believe that it suggests FRS will report the settlement to the IRS." *Id.*, at *6. That argument was rejected because the Tax Disclosure is silent at to any IRS reporting obligation. *Id.*

*Taylor* cited *Remington v. Fin. Recovery Servs., Inc.*, No. 3:16-CV-865 (JAM), 2017 WL 1014994 (D. Conn. Mar. 15, 2017), *Everett v. Fin. Recovery Servs., Inc.*, No. 116CV01806JMSMPB, 2016 WL 6948052, at *6 (S.D. Ind. Nov. 28, 2016), and *Dunbar v. Kohn Law Firm SC*, No. 17-CV-88, 2017 WL 1906748, at *5 (E.D. Wis. May 8, 2017) *appeal pending*.

*Remington* and *Everett* involved the same Tax Disclosure. In *Remington*, the court rejected the arguments that the Tax Disclosure suggested FRS would contact the IRS and it caused a false sense of urgency. Similarly, in *Everett*, the consumer

page **18** of 20

"repeatedly equate[d] tax consequences as being equal to the 1099C reporting threshold." *Everett*, at *6. These are not the arguments Antista asserts here. Moreover, in neither case did the consumer argue that the Tax Disclosure could never be true because, as argued in Point I, above, the consumer was insolvent.

*Dunbar* expressly followed *Remington* and *Everett*. *Dunbar* concluded the sentence "This settlement may have tax consequences" was "intended to alert the debtor that there is an issue that she ought to consider when deciding whether to accept the proposed settlement." *Dunbar*, at *6. Like the case here, *Dunbar* decided the collector's Rule 12(b)(6) motion. Although there was no evidence to support the court's conclusion as to intent, it never addressed the statement's debt collection purpose. In addition, although citing *Good*, never addressed that court's reasoning for concluding that the tax language was a "collection ploy."

As noted, both *Taylor* and *Dunbar* are pending on appeal.

## CONCLUSION

For the foregoing reasons, Plaintiff, Lynn Antista respectfully requests that

the Court deny Defendants' Motion [Doc. 8] to Dismiss.

Respectfully submitted,

*s/Philip D. Stern*

Dated: October 23, 2017                  Philip D. Stern

*s/Andrew T. Thomasson*

Dated: October 23, 2017                  Andrew T. Thomasson

STERN•THOMASSON LLP
150 Morris Avenue, 2nd Floor
Springfield, New Jersey 07081-1315
(973) 379-7500
*Attorneys for Plaintiff, Lynn Antista*